**KUSTOM SIGNALS, INC., Plaintiff,**

v.

**APPLIED CONCEPTS, INC. and John L. Aker, Defendants.**

**No. CIV.A.96–2296–KHV.**

United States District Court,
D. Kansas.

March 4, 2003.

D.A.N. Chase, Ginnie C. Derusseau, Michael Yakimo, Jr., Chase Law Firm, LC, Overland Park, KS, for Plaintiff.

Douglas R. Richmond, Gerald A. King, Thomas H. Stahl, Armstrong Teasdale, LLP, Kansas City, MO, Ronald Craig Fish, Falk, Vestal & Fish, Morgan Hill, CA, for Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff Kustom Signals, Inc. ("Kustom") brought suit against Applied Concepts, Inc. and John L. Aker, alleging that they infringed its patent for a police traffic radar. Defendants denied infringement and claimed that the patent was invalid. The Court granted defendants' summary judgment motion on Kustom's claim of infringement and certified the ruling for appeal under Rule 54(b), Fed.R.Civ.P. The Federal Circuit affirmed this Court's judgment and denied Kustom's petition for rehearing. The Supreme Court denied Kus-

tom's petition for a writ of certiorari and its application for an extension of time to file a petition for rehearing. This matter is now before the Court on plaintiff's *Motion For Relief From The Judgment Of Noninfringement Entered August 3, 1999* (Doc. #163) filed August 1, 2002. For reasons set forth below, the Court overrules plaintiff's motion.

### Standards For Rule 60(b) Motions

■■■ The Court has discretion to grant or deny a motion to vacate judgment under Rule 60(b), Fed.R.Civ.P. *See Fed. Deposit Ins. Corp. v. United Pac. Ins. Co.,* 152 F.3d 1266, 1272 (10th Cir.1998). Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances. *See Yapp v. Excel Corp.,* 186 F.3d 1222, 1231 (10th Cir.1999); *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.,* 909 F.2d 1437, 1440 (10th Cir.1990). Like a motion to reconsider, a motion under Rule 60(b) is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed. *See Voelkel v. Gen. Motors Corp.,* 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd,* 43 F.3d 1484, 1994 WL 708220 (10th Cir.1994).

### Factual Background

Kustom alleges that Applied Concepts, Inc. ("ACI") and John L. Aker infringed its patent for a police radar, specifically U.S. Patent No. 5,528,246 (the " '246 patent" or " '246 radar"). Defendants deny infringement and allege that the patent is invalid. ACI manufactures and sells the accused traffic radars, the Stalker Dual and the Stalker Dual SL. Aker, an ACI shareholder, designed the software that controls the operation of the digital signal processor ("DSP") in the accused radars.

## I. Background Of Doppler Police Radars

In the context of traffic surveillance, Doppler police radars emit radio signals that bounce off surfaces in front of the radar and return to a receiver which determines target speed when it measures various characteristics of the signals. Returning signals have a different frequency from outgoing signals because of the so-called "Doppler effect." The Doppler effect causes a shift in frequency which is proportional to the relative speed between the police radar (if any) and the object from which the signal bounced. The higher the frequency shift, the faster the target. A search for the radar return with the highest frequency is called a "fastest search," *i.e.* a search for the fastest target.

Because some return signals do not represent real targets, police radars attempt to screen false targets by also measuring the amplitude (the magnitude or strength) of the return signal. Stronger signals are received from larger or closer objects, and in police radar parlance, the highest amplitude signal is called the "strongest" signal.

In 1990, ACI introduced the Stalker police radar. The Stalker employed a mathematical technique known as digital Fast Fourier Transform ("FFT") processing. The Stalker radar digitized the analog radar return signals and then performed an FFT on the samples. By performing an FFT, complex analog signals can be transformed into a frequency domain representation, each component having a different frequency (indicating target speed) and amplitude (indicating target signal strength).

## II. Kustom's Development Of The '246 Patent

By July 25, 1991, the inventors had conceived the invention of the '246 patent set forth in claims 1, 3, 6, 16, 17 and 20. In

October 1993, Kustom introduced for sale to the public its Eagle series of FFT radars with fastest or strongest capability.

On June 30, 1994, Kustom submitted an application to the Patent and Trademark Office ("PTO") for the '246 patent, a traffic radar with a digital signal processor ("DSP"). The application contained 21 claims, and the PTO rejected all of them for obviousness. On June 5, 1995, Kustom filed an amended patent application which deleted the original claims and added 21 new ones. On June 18, 1996, the PTO issued the '246 patent to Kustom, as the sole owner of the patent by assignment from the inventors, Richard L. Henderson, John M. Kusek and Donald R. Bradrick. The '246 patent discloses a traffic radar device which processes Doppler return information in an effort to improve target identification.

Original independent claim 1 of the '246 patent disclosed: [1]

A method of processing Doppler return information in a traffic radar comprising the steps of:

(a) receiving Doppler return information containing at least one return signal derived from a target vehicle,

(b) presenting said Doppler return information as digital data,

(c) transforming said data into the frequency domain to provide a spectrum that includes frequency components corresponding to Doppler return signals contained in said information,

(d) validating said frequency components present in said spectrum by determining if each component has a greater magnitude than an average magnitude representative of the sensitivity of the spectrum, and

(e) determining the magnitude and frequency of each valid component.

New claim 1 did not include original clauses (d) and (e) but added the following:

(d) storing said components in a memory,

(e) searching said components in memory for the component that meets preselected magnitude or frequency criteria, and

(f) indicating the speed of the target vehicle corresponding to the component that meets said criteria.

Original independent claim 16 disclosed:

In a traffic radar, apparatus for processing Doppler return information comprising:

(a) means for receiving Doppler return information containing at least one return signal derived from a target vehicle, and for presenting said information as digital data,

(b) means for transforming said data into the frequency domain to provide a spectrum that includes frequency components corresponding to Doppler return signals contained in said information,

(c) means for determining if each of said components has a greater magnitude than an average magnitude representative of the sensitivity of the spectrum, whereby to validate those frequency components having said greater magnitude, and

(d) means for determining the magnitude and frequency of each valid component and retaining the same in memory.

---

**1.** For convenience in discussing the patent claims, the Court has added paragraph letters to those claims in the original and amended '246 patent which did not include them.

New claim 16 did not include original clauses (c) or (d) but added the following:

 (c) memory means for storing said components,

 (d) means for searching the components stored in said memory means to identify the component that meets preselected magnitude or frequency criteria, and

 (e) means responsive to the identified component for indicating the speed of the target vehicle corresponding thereto.

Original independent claim 20 disclosed:

In a traffic radar, apparatus for processing Doppler return information comprising:

 (a) means for receiving Doppler return information containing at least one return signal derived from a target vehicle, and for presenting said information as digital data,

 (b) means for transforming said data into the frequency domain to provide a spectrum that includes frequency components corresponding to Doppler return signals contained in said information,

 (c) means for determining the magnitude and frequency of each of said components,

 (d) search means for providing a plurality of modes of operation, including a mode in which a target vehicle component of greatest magnitude is identified and a mode in which a target vehicle component of highest frequency is identified, and

 (e) means under operator control for selecting either a greater magnitude or highest frequency search, whereby either strongest signal or fastest signal target identification is provided.

New claim 20 is similar to the original claim 20 but adds clause (c1) and slightly modifies clause (d):

 (c1) memory means for storing said components,

 (d) search means for providing a plurality of modes of operation, including a mode in which a target vehicle component of greatest magnitude in said memory means is identified and a mode in which a target vehicle component of highest frequency in said memory means is identified.

The '246 patent specification provides six processing modes of operation under operator control: (1) stationary mode, strongest signal; (2) stationary mode, fastest signal; (3) moving mode, opposite direction, strongest signal; (4) moving mode, opposite direction, fastest signal; (5) moving mode, same direction (same lane), normal processing; and (6) moving mode, same direction (same lane), slower target processing.

## III. Operational Comparison Of The '246 Radar And The Stalker Dual Radar

In 1994, ACI added the fastest function to its Stalker Dual radar. In the Stalker Dual, the FFT spectrum processing does not vary based on operator selection of strongest or fastest mode. Instead, the Stalker Dual simultaneously displays both the strongest target speed and the fastest target speed, in separate windows. The '246 radar has only one target window, where it displays either the strongest target speed or the fastest target speed. In the Stalker Dual radar, the fastest target speed goes blank when the fastest vehicle becomes the strongest target; the number which represents miles per hour appears to "move" from the fastest target display window to the strongest target display window. Based on the same set of data, the Stalker Dual radar can search and display both the strongest and fastest target speeds. In the '246 radar, the ra-

dar must collect new data if the operator switches from fastest to strongest mode or vice versa. In strongest mode, the Stalker Dual radar does not identify the fastest target vehicle or display any information regarding it.

### Procedural Background

## I. District Court Proceedings

### A. Claim Construction

Pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), the Honorable Earl E. O'Connor made the following claim construction findings: (1) the term "or" as used in claims 1(e), 16(d) and 20(e) means "a choice between either one of two alternatives, but not both;" (2) the term "criteria" in claims 1(e), 1(f), and 16(d) means "standards used to search and find a single fastest or strongest target, depending on the mode selected by the operator;" and (3) the term "preselected" in claims 1 and 16 means "a selection of criteria which have been programmed into the software and cannot be altered by the operator." *See Kustom*, 995 F.Supp. at 1236–38. This Court later clarified that the "standards" referred to in the definition of "criteria" included the spectrum validation process and the elimination of unwanted harmonics, and that the "search" and "searching" means in claims 1(e), 16(d), and 20(d) cover both the initial qualification of targets and the subsequent identification of a single fastest or strongest target. *See Kustom*, 52 F.Supp.2d at 1275.

### B. Summary Judgment Motions

Judge O'Connor held previously that the Stalker Dual radar does not literally infringe any of the independent claims of the '246 patent. *See Kustom*, 995 F.Supp. at 1239–40. This Court later held that the Stalker Dual radar does not infringe the '246 patent under the doctrine of equivalents:

In determining whether defendants have infringed the '246 patent, the Court first notes that after the '246 patent was issued, Aker obtained a patent which covered the accused Stalker Dual radars. *See* Joint Exh. II, U.S. Patent No. 5,691,724 (the " '724 patent"). In the prosecution history of the '724 patent, defendants specifically disclosed the '246 patent as prior art and stated that the '246 patent "[t]eaches a digital FFT based Doppler traffic radar that can selectively find either the strongest radar return signal and display the speed thereof or, upon a command from the operator, finds the highest frequency Doppler radar return signal which has a nonzero amplitude and calculates and displays the speed thereof as indicative of the speed of the fastest target." Joint Exh. HH, '724 Patent Prosecution History, Information Disclosure Statement filed Aug. 8, 1996, at 2. Nevertheless, the PTO issued Aker a patent. Though not conclusive, the issuance of the '724 patent after disclosure of the '246 patent as prior art is entitled to due weight in determining whether defendants' Stalker Dual radar infringes the '246 patent. *See Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir.1996); *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1191–92 (Fed.Cir.1996).

In addition to showing that the '246 radar and the Stalker Dualradar are equivalent in fact, Kustom must clear three preliminary legal hurdles. First, the doctrine of equivalents may not be invoked unless the all-elements (or all-limitations) rule is satisfied, *i.e.* every claimed element or its equivalent must be contained in the accused device. *See Warner–Jenkinson [Co. v. Hilton Davis Chemical Co.]*, 520 U.S. [17] at 39 n. 8[,

117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)]; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 172 F.3d 1361, 1370 (Fed.Cir.1999); *Ethicon [Endo–Surgery, Inc. v. United States Surgical Corp.]*, 149 F.3d [1309] at 1316 [(Fed.Cir.1998)]. Second, prosecution history estoppel may bar a patent holder who limits one of its claims to avoid rejection by the PTO and then seeks to expand the claims under the doctrine of equivalents to include the subject matter previously excluded. *See Warner–Jenkinson*, 520 U.S. at 39 n. 8[, 117 S.Ct. 1040]; *Festo*, 172 F.3d at 1371–74. Third, the doctrine of equivalents cannot be used to encompass subject matter that the patent holder could not have patented at the time of the original patent application, *i.e.* the range of equivalents cannot be so broad as to ensnare the prior art. *See Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed.Cir.), *cert. denied*, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). In the instant motions, defendants have raised the first and third grounds as a legal bar to a finding of infringement under the doctrine of equivalents. * * *

.... the Court concludes that Kustom has failed to satisfy the all-elements rule. A finding that the Stalker Dual radars infringe the '246 patent under the doctrine of equivalents is therefore precluded as a matter of law. * * *

Even if plaintiff could satisfy the all-elements rule, the Court finds that no reasonable trier of fact could find that the Stalker Dual radar is equivalent in fact to the '246 radar. To prevail on a claim of infringement under the doctrine of equivalents, a patentee must prove by a preponderance of the evidence that "the differences between the claimed and accused products or processes are insubstantial." *[Hilton Davis Chemical Co. v.] Warner–Jenkinson [Co.]*, 62 F.3d

[1512] at 1517 [(Fed.Cir.1995)]. The Court assesses the substantiality of the differences between two products "according to an objective standard" viewed from "the vantage point of one of ordinary skill in the relevant art." *Id.* at 1519. The doctrine of equivalents is applied on an element-by-element basis, not to the invention as a whole. *See Warner–Jenkinson*, 520 U.S. at 29[, 117 S.Ct. 1040].

The traditional measure of equivalency is the "function-way-result" test. *See Warner–Jenkinson*, 62 F.3d at 1518–21. It focuses on whether an element of an accused device performs substantially the same function in substantially the same way to achieve substantially the same result as each element of the claimed device. *See id.* at 1518. The Federal Circuit has noted other relevant inquiries. For example, the substantiality of differences may be measured by "whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." *Id.* at 1518; *see Warner–Jenkinson*, 520 U.S. at 36, 117 S.Ct. 1040; *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1261 (Fed.Cir.1989). "Known interchangeability" of an element in the accused device with a claimed element is "potent evidence that one of ordinary skill in the relevant art would have considered the change insubstantial." *Warner–Jenkinson*, 62 F.3d at 1519. Known interchangeability is evaluated at the time of infringement, not at the time the patent was issued. *See Warner–Jenkinson*, 520 U.S. at 37[, 117 S.Ct. 1040].

As discussed with respect to the all-elements rule, the Stalker Dual and '246 radars do not perform substantially the same functions. The Stalker Dual radar is capable of displaying both fastest and

strongest targets based on the same set of data while the '246 radar selectively displays either fastest or strongest targets but not both. Accordingly, the two radars perform substantially different functions which produce different displays to the radar operator.

Despite the complexity of the overall device, the selective display element of the '246 patent is relatively simple—either A or B, but not both. Plaintiff has not shown any "subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, [which] obfuscated the significance of this limitation at the time of its incorporation into the claim." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed.Cir.1997); *see Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 938 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). The change from a radar device that could perform either A or B but not both to a radar that could perform A and B involved the mere addition of a "link." *See Declaration of Thomas J. Herrick* (Doc. # 124) filed Mar. 1, 1999 at 25. Plaintiff could have foreseen the alteration of the patented invention from "or" to "and." Indeed, plaintiff claims that it intended to patent a fastest feature that would display the fastest target "either in lieu of the strongest target vehicle or in addition to the strongest vehicle's speed." Kusek Depo. at 25–28; *see Memorandum In Support Of Plaintiff's Motion For Summary Judgment Of Infringement Of U.S. Patent No. 5,528,246* (Doc. # 123) filed Mar. 1, 1999 at 44 (Stalker Dual in fastest mode merely combines known strongest function with known fastest function). Despite plaintiff's apparent attempt to draft an "and/or" claim, plaintiff must accept the limited "or" claim it obtained from the PTO. "[A]s between the paten-

tee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." *Sage*, 126 F.3d at 1425.

In addition to the different displays of the two radars, the radars calculate target speeds in substantially different ways which produces substantially different results. As explained in detail in the Factual Background, *supra*, section E, the Stalker Dual radars eliminate false targets and unwanted harmonics in substantially different ways to achieve substantially different displayed target speeds. In some circumstances, the Stalker Dual radar will not display any target while the '246 radar may display a false target. In other situations, the Stalker Dual radar conducts different processing of the FFT spectrum to avoid "look through" and "blind spot" problems present in the '246 radar. Even if the '246 invention is considered a "pioneer invention," no reasonable trier of fact could find that the differences between the two radars are insubstantial.

Kustom essentially concedes that the two radars calculate target speeds in substantially different ways to produce different results. Kustom argues, however, that these differences in the Stalker Dual radar merely reflect additional functions to those performed by the '246 radar. One of the purposes of the '246 patent is to provide a radar that "improve[s] target identification and minimize[s] interference and unwanted harmonics." Joint Exh. AA, Col. 1, ll 11–13. Moreover, the "search" and "searching" means of 1(e), 16(d) and 20(d) include the spectrum validation process disclosed in the '246 flow chart. Kustom cannot argue that the validation of targets is part of the claims for validity

purposes but not part of the claims for infringement purposes. The differences in the calculation and display of target speeds relate to the "search" and "searching" means of the independent claims of the '246 patent. ACI has not simply added to the spectrum validation process disclosed in the '246 patent, it has produced a radar with a substantially different validation process which produces different results for the operator.

Finally, the Court evaluates the known interchangeability of the Stalker Dual and '246 radars. Kustom has not presented any evidence that those of ordinary skill in the art knew that the Stalker Dual's spectrum validation process was interchangeable with the '246 radar's spectrum validation process. With respect to the selective display element of the '246 patent, Kustom maintains that dual display capability is disclosed in the '246 patent because each individual display is shown in the patent. The Court already held that the '246 patent does not disclose dual display of fastest and strongest targets based on the same set of data. Kustom has not presented any evidence regarding the complexity of the "link" technology to combine fastest and strongest target displays. To the extent such technology existed at the time of the '246 patent application, as Kustom apparently argues, Kustom should have drafted a broader claim to include this technology.

For the above reasons, the Court finds that Kustom's claim of infringement under the doctrine of equivalents is barred by the all-elements rule and that no reasonable trier of fact could find that the Stalker Dual radars are equivalent in fact to the '246 patent.

In sum, the Court has previously held that defendants did not literally infringe the '246 patent. *See Kustom,* 995 F.Supp. at 1239–40. The Court finds as a matter of law that the Stalker Dual radars do not infringe the '246 patent under the doctrine of equivalents. It therefore sustains defendants' motion for summary judgment of non-infringement of the '246 patent under the doctrine of equivalents and overrules plaintiff's motion on the issue.

52 F.Supp.2d at 1278–83 (footnotes omitted).

The Court entered summary judgment for defendants on Kustom's claim of infringement. The Court did not enter judgment on defendants' claim that the patent was invalid, but it certified the summary judgment ruling for appeal under Rule 54(b), Fed.R.Civ.P.

## II. Federal Circuit's Decision In *Festo*

On November 29, 2000, while the summary judgment issue was pending on appeal, the Federal Circuit decided *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 234 F.3d 558 (2000). In *Festo,* the Federal Circuit held that "a narrowing amendment made [during prosecution of a patent] for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element" and that "prosecution history estoppel acts as a complete bar to the application of the doctrine of equivalents when an amendment has narrowed the scope of a claim for a reason related to patentability." *Festo,* 234 F.3d at 566, 574. In other words, when an inventor narrows a patent claim during prosecution for any reason related to patentability, the inventor cannot rely on the doctrine of equivalents as to that claim in a later infringement action. *See id.* at 574–75.

## III. Federal Circuit Proceedings In This Action

On September 5, 2001, the Federal Circuit affirmed the judgment of this Court

which granted summary judgment of non-infringement of the '246 patent. *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326 (Fed.Cir.2001). The Federal Circuit held that this Court properly found no infringement either literally or under the doctrine of equivalents. As to the doctrine of equivalents, the Federal Circuit held that under the all-elements rule, the ruling of noninfringement could not be sustained. It nonetheless affirmed this Court's alternative ground, as follows:

> Applying the function/way/result test of *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097, 85 U.S.P.Q. 328, 330 (1950), the court held that no reasonable trier of fact could find equivalency. The court found that the accused device's methodology of automatically searching both magnitude and frequency data was a substantially different way of operation, compared with the '246 device's operator-initiated search of either magnitude or frequency data. Kustom argues that this analysis is incorrect, and that a "link" in the radar's programming is all that differentiates the "or" of the claims and the "and" of the accused device. Kustom states that such a link is an insubstantial difference.
>
> The district court correctly concluded that the prosecution history estops Kustom from relying on the position that a device which searches for both fastest and strongest targets performs substantially the same function as a device which searches for either the fastest or the strongest target. During prosecution, in response to a rejection for obviousness under 35 U.S.C. § 103, Kustom amended claims 1 and 16 to include this limitation to the alternative search for magnitude or frequency, and argued that claim 20 was directed to operator-selected alternative search modes for magnitude or frequency. The use of digital signal processing for traffic radar was known to the prior art, and the prosecution of the '246 invention emphasized its operator-selected search of memory for the data identifying the fastest or strongest target. The amendments and arguments during prosecution estop Kustom's assertion of equivalency of the accused radar device, which performs and displays both search modes. We affirm the grant of summary judgment of noninfringement on this alternative ground.

264 F.3d at 1333. Kustom filed a petition for rehearing on this issue, but the Federal Circuit overruled it.

## IV. Kustom's Petition For Certiorari To The United States Supreme Court

On January 17, 2002, plaintiff filed a petition for a writ of certiorari. On April 15, 2002, the Supreme Court denied plaintiff's petition. On May 9, 2002, plaintiff applied for an extension of time to file a petition for rehearing until 15 days after the Supreme Court ruled in *Festo*. Four days later, the Supreme Court denied plaintiff's application.

## V. The Supreme Court's *Festo* Decision

On May 28, 2002, the Supreme Court vacated the Federal Circuit opinion in *Festo*. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). The Supreme Court stated:

> The Court of Appeals held that prosecution history estoppel is a complete bar, and so the narrowed element must be limited to its strict literal terms. Based upon its experience the Court of Appeals decided that the flexible-bar rule is unworkable because it leads to excessive uncertainty and burdens legitimate inno-

vation. For the reasons that follow, we disagree with the decision to adopt the complete bar.

Though prosecution history estoppel can bar challenges to a wide range of equivalents, its reach requires an examination of the subject matter surrendered by the narrowing amendment. The complete bar avoids this inquiry by establishing a per se rule; but that approach is inconsistent with the purpose of applying the estoppel in the first place—to hold the inventor to the representations made during the application process and to the inferences that may reasonably be drawn from the amendment.

122 S.Ct. at 1840, 122 S.Ct. 1831. On June 3, 2002, in light of its decision in *Festo,* the Supreme Court vacated and remanded nine other cases.[2] Later in 2002, the Supreme Court vacated and remanded three additional cases.[3]

### Analysis

Based on the Supreme Court decision in *Festo,* Kustom asks this Court to vacate its judgment. Kustom maintains that the Federal Circuit erroneously affirmed this Court's judgment, based on a complete bar rule of prosecution history estoppel which the Supreme Court later rejected in *Festo.* Defendants argue that (1) a post-judgment change of law does not entitle a party to

relief under Rule 60(b)(6), (2) the relief which Kustom requests is barred by the law of the case doctrine and the mandate rule, and (3) *Festo* does not affect this Court's judgment of noninfringement.

In essence, Kustom challenges the mandate of the Federal Circuit, not a judgment of this Court. And as explained below, Kustom has not established "exceptional circumstances" which justify relief under Rule 60(b)(6).

Ordinarily, the Court would apply Tenth Circuit law to determine whether relief is appropriate under Rule 60(b). *See Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1550 (Fed.Cir.1987) (because ruling on Rule 60(b) motion is procedural issue not unique to patent law, law of regional circuit applies); *see also Ashland Oil, Inc. v. Delta Oil Prods. Corp.,* 806 F.2d 1031, 1033 (Fed.Cir.1986) (applying Seventh Circuit law to determine whether change in law justified relief under Rule 60(b)). Here, however, Kustom's motion raises issues regarding the Federal Circuit mandate and the application of prosecution history estoppel both before and after the Supreme Court decision in *Festo.* *See Fiskars, Inc. v. Hunt Mfg. Co.,* 279 F.3d 1378, 1380 (Fed.Cir.2002) (Federal Circuit law applies where district court's Rule 60(b) ruling turns on substantive matters that pertain to patent law); *Broyhill Fur-*

**2.** *PTI Techs., Inc. v. Pall Corp. Techs., Inc.,* 535 U.S. 1109, 122 S.Ct. 2324, 153 L.Ed.2d 152 (2002); *AccuScan, Inc. v. Xerox Corp.,* 535 U.S. 1109, 122 S.Ct. 2323, 153 L.Ed.2d 152 (2002); *Lockheed Martin Corp. v. Space Sys./Loral, Inc.,* 535 U.S. 1109, 122 S.Ct. 2349, 153 L.Ed.2d 152 (2002); *Semitool, Inc. v. Novellus Sys., Inc.,* 535 U.S. 1109, 122 S.Ct. 2323, 153 L.Ed.2d 152 (2002); *Creo Prods. Inc. v. Dainippon Screen Mfg. Co., Ltd.,* 535 U.S. 1109, 122 S.Ct. 2323, 153 L.Ed.2d 151 (2002); *Senior Techs., Inc. v. R.F. Techs., Inc.,* 535 U.S. 1108, 122 S.Ct. 2323, 153 L.Ed.2d 151 (2002); *Insituform Techs., Inc. v. CAT Contracting, Inc.,* 535 U.S. 1108, 122 S.Ct.

2322, 153 L.Ed.2d 151 (2002); *Mycogen Plant Science, Inc. v. Monsanto Co.,* 535 U.S. 1109, 122 S.Ct. 2324, 153 L.Ed.2d 153 (2002); *Pioneer Magnetics, Inc. v. Micro Linear Corp.,* 535 U.S. 1108, 122 S.Ct. 2322, 153 L.Ed.2d 151 (2002).

**3.** *Intermatic Inc. v. Lamson & Sessions Co.,* —— U.S. ——, 123 S.Ct. 549, 154 L.Ed.2d 423 (2002); *Simple Tech., Inc. v. Dense–Pac Microsystems, Inc.,* —— U.S. ——, 123 S.Ct. 69, 154 L.Ed.2d 3 (2002); *Talbert Fuel Sys. Patents Co. v. Unocal Corp.,* —— U.S. ——, 123 S.Ct. 70, 154 L.Ed.2d 3 (2002).

niture Indus., Inc. v. Craftmaster Furniture Corp., 12 F.3d 1080, 1083 (Fed.Cir. 1993) (same). In the context of a change of law after the Federal Circuit has issued a mandate, the Federal Circuit has noted that a Rule 60(b) motion may be characterized as procedural (namely, whether a later decided case justifies relief) or substantive (namely, how to interpret the appellate court's mandate). *See Concept Design Elecs. & Mfg., Inc. v. Duplitronics, Inc.*, 104 F.3d 376, 1996 WL 729637, at *4 n. 3 (Fed.Cir. Dec.19, 1996). The Court need not decide this question because the standards to reopen a judgment based on a subsequent change of law are "sufficiently well established and uniform" that the result would be the same under Tenth Circuit or Federal Circuit law. *Id.* Because Tenth Circuit law is more fully developed on the procedural question whether Rule 60(b) relief may be granted based on a subsequent change of law, the Court will apply Tenth Circuit law on this limited issue.

■ Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir.1975) (citation omitted), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). It is well established, however, that "[a] change in the law or in the judicial view of an established rule of law is not such an extraordinary circumstance which justifies relief" under Rule 60(b). *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir.1958). The Tenth Circuit has departed from *Collins* in very limited instances. *See Pierce*, 518 F.2d at 722–23 (extraordinary circumstance where change in law arose out of very accident in which plaintiffs had been involved); *see also Adams v. Merrill Lynch Pierce Fenner & Smith*, 888 F.2d 696, 702 (10th Cir.1989) (based on *Pierce*, district court did not abuse discretion in reopening case based on subsequent Supreme Court decision). *Collins*, however, remains the rule.

*See Ute Indian Tribe v. State of Utah*, 114 F.3d 1513, 1522 (10th Cir.1997) (*Pierce* was an "extraordinary case" based on "unusual combination of events"), *cert. denied*, 522 U.S. 1107, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998); *Colo. Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.*, 962 F.2d 1528, 1535 (10th Cir.1992) (*Collins* controls); *Van Skiver v. United States*, 952 F.2d 1241, 1244–45 (10th Cir.1991) (same). The Tenth Circuit has noted that "[a]ny broader rule would judicially abolish the concept of finality in litigation and make every lawsuit winner vulnerable to additional litigation if and when the law is changed." *Sproull v. Union Texas Prods. Corp.*, 944 F.2d 911, 1991 WL 184098, at *2 (10th Cir.1991).

■ As noted, Kustom asks this Court to vacate its judgment, which was affirmed by the Federal Circuit, because of the Supreme Court decision in *Festo*. Kustom is not entitled to relief for several reasons: (1) the Federal Circuit did not disturb this Court's finding that as a matter of law, the Stalker Dual radar is not equivalent in fact to the '246 radar; (2) even if the Federal Circuit affirmed this Court's judgment based solely on prosecution history estoppel, it did not rely on the "complete bar" rule or any other principle which the Supreme Court overturned in *Festo*; and (3) the law of the case doctrine and the mandate rule counsel against reopening the judgment here.

**I. The Federal Circuit Did Not Disturb This Court's Ruling That As A Matter Of Law, The Accused Device Is Not Equivalent In Fact To The '246 Radar**

On two grounds, this Court granted summary judgment of noninfringement under the doctrine of equivalents: (1) Kustom did not satisfy the all-elements rule and (2) ACI's Stalker Dual radar was not

equivalent in fact to the one disclosed in plaintiff's '246 patent. The Federal Circuit affirmed this Court's ruling that the Stalker Dual radar does not infringe the '246 patent under the doctrine of equivalents. In doing so, the Federal Circuit clearly rejected the all-elements rule as a basis for a finding of noninfringement under the doctrine of equivalents. It noted, however, that this Court based its holding on the alternative ground that the Stalker Dual radar was not equivalent in fact to the one disclosed in the '246 patent. *See Kustom,* 264 F.3d at 1333. The Federal Circuit noted Kustom's argument that this analysis was incorrect, and that a link in radar programming was all that differentiated the "or" of the claims and the "and" of the accused device—a purportedly insubstantial difference. *See id.* The Federal Circuit, however, rejected Kustom's argument, as follows:

> The district court correctly concluded that the prosecution history estops Kustom from relying on the position that a device which searches for both fastest and strongest targets performs substantially the same function as a device which searches for either the fastest or the strongest target. During prosecution, in response to a rejection for obviousness under 35 U.S.C. § 103, Kustom amended claims 1 and 16 to include this limitation to the alternative search for magnitude or frequency, and argued that claim 20 was directed to operator-selected alternative search modes for magnitude or frequency. The use of

digital signal processing for traffic radar was known to the prior art, and the prosecution of the '246 invention emphasized its operator-selected search of memory for the data identifying the fastest or strongest target. The amendments and arguments during prosecution estop Kustom's assertion of equivalency of the accused radar device, which performs and displays both search modes. We affirm the grant of summary judgment of noninfringement on this alternative ground.

*Id.* Although the Federal Circuit mentioned prosecution history and estoppel, it may have done so to reinforce this Court's conclusion that the additional radar program link was a substantial difference—one which Kustom had highlighted during the prosecution history.[4] The Federal Circuit did not say that it was applying prosecution history estoppel and this Court did not address that issue. Therefore the Federal Circuit apparently affirmed because (1) this Court correctly ruled that the Stalker Dual radar was not equivalent in fact to the one disclosed in the '246 patent and/or (2) the Federal Circuit independently determined that prosecution history estoppel barred a finding of infringement under the doctrine of equivalents.

Kustom argues that the Federal Circuit erroneously relied on prosecution history estoppel and did not address this Court's conclusion as to equivalency in fact. The Court, however, does not read the Federal Circuit opinion so narrowly. In rejecting

---

4. In its discussion of equivalence in fact, this Court had noted that Kustom's position that the '246 patent included a fastest feature that would display the fastest target either in lieu of the strongest target vehicle or in addition to the strongest vehicle's speed was inconsistent with the claim it obtained from the Patent and Trademark Office. *See Kustom,* 52 F.Supp.2d at 1282–83. This Court also noted that to the extent Kustom knew of the addi-

tional radar program link at the time of the patent application, it should have drafted an "and/or" claim to include this technology. *See id.* The Federal Circuit reached a similar conclusion but relied on the prosecution history (not the actual language of the issued claim) to establish that Kustom did not obtain an "and/or" claim. *See Kustom,* 264 F.3d at 1333.

Kustom's infringement argument under the doctrine of equivalents, this Court did not rely on prosecution history estoppel. Indeed, it noted that Judge O'Connor had rejected this defense and that defendants did not re-assert it in their motions for summary judgment. *See Kustom*, 52 F.Supp.2d at 1278 n. 9. Under Kustom's view, the Federal Circuit missed the fact that this Court did not rely on prosecution history estoppel and affirmed on a ground which is now discredited. The Federal Circuit opinion does not completely foreclose this possibility, but this Court believes that such a view is erroneous—particularly since the Federal Circuit denied Kustom's request for rehearing. In its petition for rehearing, Kustom argued:

> the panel incorrectly found that the "district court correctly concluded that the prosecution history estops Kustom from relying on the position that a device which searches for both fastest and strongest targets performs substantially the same function as a device which searches for either the fastest or strongest target." In fact, prosecution history estoppel was rejected by Judge O'Connor and by Judge Vratil. Applied Concepts did not reassert the estoppel defense in the motions before Judge Vratil on the infringement issues. This finding of prosecution history estoppel is a material error that resulted in affirmance of the grant of a summary judgment of noninfringement, instead of reversal under the all elements rule.

> \* \* \* \* \* \*

The panel clearly misapprehended the two district court decisions from which this appeal was taken . . . .

\* \* \* \* \* \*

. . . with the fiction of prosecution history estoppel exposed and the court having found all elements present in the accused device, the ruling suggested in Chief Judge Mayer's dissent is appropriate.

Petition For Rehearing filed September 19, 2001 at 1–2, 4, 7, attached as Exhibit D to *Defendants' Memorandum* (Doc. # 166).

The Court must assume that in overruling the petition for rehearing, the Federal Circuit recognized that this Court did not rely on prosecution history estoppel.[5] Therefore the Federal Circuit must have affirmed because (1) this Court correctly ruled that the Stalker Dual radar was not equivalent in fact to the one disclosed in the '246 patent and/or (2) the Federal Circuit independently concluded that as a matter of law, prosecution history estoppel bars a finding of infringement under the doctrine of equivalents. If the Federal Circuit relied on the first ground, Kustom is not entitled to relief because *Festo* does not involve equivalence in fact and this Court is bound by the Federal Circuit mandate. Even if the Federal Circuit relied solely on the second ground, however, Kustom has not shown why it is entitled to relief. This Court's judgment was explicitly based, in part, on its conclusion that the Stalker Dual radar is not equivalent in fact to the '246 radar. The Federal Circuit

---

5. The fact that the Federal Circuit denied Kustom's petition for rehearing does not show, by itself, that the Federal Circuit affirmed this Court's ruling based on a lack of equivalency in fact. *See, e.g., Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1480 (Fed.Cir.) (summary denial of motion for rehearing en banc insufficient to create inference regarding court opinion on merits of case), *cert. denied*, 525 U.S. 877, 119 S.Ct. 181, 142 L.Ed.2d 148 (1998); *Moore v. Anderson*, 222 F.3d 280, 284 (7th Cir.2000) (same). The denial of rehearing, however, supports the Court's conclusion that in this case, the Federal Circuit did not simply overlook the fact that this Court did not rule on the issue of prosecution history estoppel.

mandate in this case, and the Supreme Court decision in *Festo,* do not call into question this ruling. Rule 60(b) relief therefore is not warranted.[6]

## II. Even If The Federal Circuit Affirmed this Court's Judgment Based Solely On Prosecution History Estoppel, It Did Not Rely On The "Complete Bar" Rule Or Any Other Principle Overturned By The Supreme Court In *Festo.*

As noted above, the Federal Circuit may have based its decision on prosecution history estoppel. If it did so, however, it did not rely on *Festo.* Neither the majority nor the dissent referred to *Festo,* to any "complete bar" rule or to any presumption that amendments made during prosecution of a patent are for reasons of patentability. Consistent with the Supreme Court decision in *Festo,* the Federal Circuit examined the "subject matter surrendered by the narrowing amendment," *i.e.* a device which searches for both fastest and strongest targets, and held the inventors to representations made during the prosecution of the patent application and inferences reasonably drawn from the amendment. *See Festo,* 122 S.Ct. at 1840. Because the Federal Circuit did not rely on a "complete bar" rule, Kustom is not entitled to relief under Rule 60(b)(6) based on the Supreme Court decision in *Festo.*

## III. The Law Of The Case Doctrine And The Mandate Rule Also Counsel Against Reopening This Court's Judgment

 The law of the case doctrine posits that when a court decides a rule of law, that decision "should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The doctrine seeks to preserve the finality of judgments, to prevent continued re-argument of issues already decided, and to preserve scarce judicial resources. *Procter & Gamble Co. v. Haugen,* 317 F.3d 1121, 1132–33 (10th Cir. 2003) (citing *Huffman v. Saul Holdings Ltd. P'ship,* 262 F.3d 1128, 1132 (10th Cir. 2001)); *see United States v. Triangle Oil,* 277 F.3d 1251, 1259 (10th Cir.2002). The doctrine has particular relevance following remand from a court of appeals. *Huffman,* 262 F.3d at 1132. "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.,* 53 F.3d 1181, 1183 (10th Cir.1995). An important corollary to the law of the case doctrine, known as the "mandate rule," requires a district court to comply strictly with the mandate

---

**6.** Kustom has not shown extraordinary circumstances which would justify relief from the Court's holding that the Stalker Dual radar is not equivalent in fact to the '246 radar. Kustom apparently argues that the fact that the Federal Circuit never explicitly addressed this ruling is sufficient to warrant relief under Rule 60(b)(6). Even if the Court assumes that the Federal Circuit did not address the ruling on equivalence in fact, Kustom would not be entitled to further proceedings before *this Court* on that same issue because *Festo* does not address equivalence in fact. Therefore, from this Court's perspective, any relief under Rule 60(b)(6) would be a hollow victory for Kustom because the Court would simply re-enter judgment in favor of defendants based on its prior ruling that the Stalker Dual radar is not equivalent in fact to the '246 radar. Kustom could then appeal this Court's judgment and ask for an explicit ruling from the Federal Circuit on the issue of equivalence in fact. Such an appeal would not be fundamentally different than an appeal from the denial of Kustom's Rule 60(b)(6) motion. In some respects, this Court's ruling on Kustom's motion is of marginal importance because Kustom may appeal in any event and attempt to seek clarification of the Federal Circuit opinion before that court.

rendered by the reviewing court. *See Ute Indian Tribe,* 114 F.3d at 1520–21.[7]

▪ Courts recognize several exceptions to both the law of the case doctrine and the mandate rule. One exception is triggered by a subsequent, contrary decision of applicable law by a controlling authority. *Grigsby v. Barnhart,* 294 F.3d 1215, 1218–19 (10th Cir.2002). Under the mandate rule, however, such a decision must reflect a "dramatic change in controlling legal authority." *Huffman,* 262 F.3d at 1133.

The procedural history of this case, although not dispositive, strongly suggests

that the Court should deny Kustom's request for relief.[8] As explained above, Kustom has had an opportunity to argue that this Court's judgment was erroneous. The Federal Circuit and Supreme Court have rejected, at least implicitly, the very arguments advanced in support of Kustom's Rule 60(b)(6) motion.[9] Neither the Federal Circuit opinion nor the Supreme Court decision in *Festo* question this Court's holding that the Stalker Dual radar is not equivalent in fact to the '246 radar. For this Court to vacate its judgment based on the very arguments Kustom asserted on appeal would reflect disregard of the Federal Circuit panel opinion, its denial of rehearing and the Supreme Court refusal

---

7. The Federal Circuit applies a similar rule. *See Tronzo v. Biomet, Inc.,* 236 F.3d 1342, 1349 (Fed.Cir.2001) (exceptional circumstances may warrant departure from mandate rule).

8. This Court recognizes that its judgment of noninfringement is only a partial judgment and that defendants' claim of patent invalidity remains pending. Therefore principles of finality are arguably less persuasive. By the same token, the Court permitted an interlocutory appeal under Rule 54(b) so the Federal Circuit could conclusively resolve the claim construction findings and infringement issue. No one in this case anticipated further proceedings on these issues unless the Federal Circuit or the Supreme Court vacated the judgment. Indeed, as the Court recalls its status conferences with the parties, defendants stated that if the Federal Circuit affirmed the judgment of noninfringement, they most likely would not pursue their remaining defense of patent invalidity.

9. In Kustom's petition for rehearing in the Federal Circuit, it highlighted that in finding noninfringement under the doctrine of equivalents, this Court did not rely on prosecution history estoppel, *see* Petition For Rehearing at 1–2, 4–5, 7, but the Federal Circuit denied Kustom's petition.

In its petition for a writ of certiorari in the United States Supreme Court, Kustom referenced some 30 times the Federal Circuit decision in *Festo* or the "complete bar" rule. *See*

Petition For A Writ Of Certiorari, attached as Exhibit G to *Defendants' Memorandum* (Doc. # 166). It also emphasized that in finding noninfringement under the doctrine of equivalents, this Court had not relied on prosecution history estoppel. *See id.* at 8. After the Supreme Court denied the petition for a writ, Kustom sought to extend its time to file a petition for rehearing, until the Supreme Court decided *Festo.* The Supreme Court denied this application, however, and Kustom did not seek rehearing. Some two weeks later, the Supreme Court vacated the Federal Circuit opinion in *Festo;* shortly thereafter, it remanded nine cases to the Federal Circuit in light of its decision. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002); *supra* note 3. Without attempting to read too much into why the Supreme Court rejected Kustom's petition for certiorari and request for an extension of time to file a petition for rehearing based on *Festo,* this Court must infer that the Supreme Court recognized that *Festo* applied in a number of other cases but not this one.

When the Supreme Court issued its decision in *Festo* the instant action was no longer pending on appeal, but Kustom had highlighted the potential applicability of *Festo* in its petition for certiorari and in its application for an extension of time to file a petition for rehearing, which was filed less than three weeks before the Supreme Court decided *Festo.*

to grant certiorari. The Court therefore declines to vacate its judgment.

**IT IS THEREFORE ORDERED** that plaintiff's *Motion For Relief From The Judgment Of Noninfringement Entered August 3, 1999* (Doc. # 163) filed August 1, 2002 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that on or before **March 6, 2003,** defendants shall show cause in writing why the Court should not dismiss their defense of patent invalidity and enter final judgment.

**IT IS FURTHER ORDERED** that a telephone status conference is set for **March 6, 2003** at 12:30 p.m. The Court will initiate the call.

The Clerk is directed to mail and fax a copy of this Memorandum And Order to all counsel of record.