SAFAS CORPORATION, Plaintiff,

v.

ETURA PREMIER, L.L.C., Defendant.

No. CIV.A. 01–833–KAJ.

United States District Court,
D. Delaware.

Nov. 12, 2003.

Richard K. Herrmann, Blank Rome LLP, Wilmington, DE, Dickstein, Shapiro, Morin & Oshinsky LLP, New York, NY (Arthur M. Lieberman, Dawn Rudenko, of counsel), for plaintiff.

Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, Bricker & Eckler LLP, Columbus, OH (T. Earl LeVere, of counsel), Jerry K. Mueller, Mueller and Smith, L.P.A., Mueller–Smith Building, Columbus, OH, for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

This is a patent infringement case. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. Presently before me is defendant Etura Premier, L.L.C.'s ("Etura") Motion for Summary Judgment of No Infringement and Invalidity (the "Motion"). (Docket Item ["D.I."] 60.) For the reasons that follow, Etura's Motion will be granted in part and denied in part.

## II. BACKGROUND

### A. Procedural Background

Plaintiff Safas Corporation ("Safas") filed a complaint on December 14, 2001, alleging that Etura was willfully infringing United States Patent No. 5,476,895 (issued December 19, 1995) (the " '895 patent"). (D.I.1.) Etura answered the complaint on January 2, 2002, denying all allegations of infringement and asserting several affirmative defenses, including invalidity of the '895 patent. (D.I.5.) Etura filed the instant Motion on September 5, 2003. (D.I.60.) The parties filed their respective requests for construction of certain disputed claim terms, pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995)(en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577

(1996), on September 25, 2003. (D.I.78, 80.) After hearing the parties on October 22, 2003 (D.I.93), I issued an Opinion and Order on November 5, 2003, construing the disputed claim terms (D.I.96). The pretrial conference in this case is scheduled for November 19, 2003, with trial set to begin on December 1, 2003.

### B. Factual Background

Safas is in the business of developing and manufacturing simulated granite and stone, and is the owner by assignment of the '895 patent, entitled "Granite-like coating" (issued December 19, 1995). (D.I. 1 ¶ 3,6.) The named inventor on the '895 patent is Akbar Ghahary. The patent-insuit discloses a method for applying a coating which mimics the appearance of granite. '895 patent, Col. 2, Ins. 63–64. The coating comprises at least two components, a gel coat and granules, and may be sprayed or applied by brush, roller, or curtain wall. Id., Col. 2., Ins. 65–67.

Between March 2001 and June 2002, Etura offered for sale and sold molded composite vanity top products under the "Korstone" trade name. (D.I. 61 at 5.) The Korstone products consisted of an outer gel coat layer containing colored plastic granules,[1] with a cast polymer substrate layer underneath the coating for support and strength. (Id.) Safas alleges that Etura's Korstone products infringe claims 1–3 of the '895 patent.[2] (D.I. 78 at 1.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to judgment as a matter of law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 151–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party also bears the responsibility of informing the court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A patent infringement analysis involves two steps: claim construction and application of the construed claim to the accused process or product. See Markman, 52 F.3d at 976. The court reviews the first step, claim construction, as a matter of law. See Cybor Corp. v. FAS Tech-

---

**1.** Etura used plastic granules from ACS International, Inc. ("ACS"), RJ Marshall Company ("RJ Marshall"), and United Granules Company in its Korstone products. (D.I. 64 ¶ 14.)

**2.** Claim 1 of the '895 patent is representative of those in suit:

    1. A method of coating an article, which comprises

    (a) preparing a coating composition comprising a gel coat and granules, the gran-

ules comprising a thermoplastic and a thermoset plastic, the granules being visually differentiable from the gel coat, and being substantially immiscible and substantially isopycnic in density with the gel coat; and

    (b) contacting the article with the coating composition.

'895 patent, Col. 8, Ins. 2–9. Claims 2 and 3, which are also in suit, depend from independent claim 1.

*nologies, Inc.,* 138 F.3d 1448, 1454 (Fed. Cir.1998) (en banc). The second step, application of the claim to the accused product, is a question of fact. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co., Inc.,* 793 F.2d 1279, 1282 (Fed. Cir.1986); *see also Kustom Signals, Inc. v. Applied Concepts, Inc.,* 264 F.3d 1326, 1332 (Fed.Cir.2001) ("Patent infringement, whether literal or under the doctrine of equivalents, is a question of fact."). Summary judgment is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed. Cir.2001). Because the question of infringement is dispositive, I focus on it in the following discussion and decline to address the challenge to validity.

## IV. DISCUSSION

■ In support of its Motion, Etura argues that its products do not infringe the '895 patent and that the '895 patent is invalid as a matter of law. (D.I. 61 at 1.) Specifically, Etura argues that none of the granules used in its accused products "comprise a thermoplastic and a thermoset plastic," a limitation present in all of the asserted claims. (*Id.*) On November 5, 2003, I construed the disputed claim term "the granules comprising a thermoplastic and a thermoset plastic" to mean that each individual granule must contain a combination of a thermoplastic component and a thermoset plastic component. (D.I.95.) Etura claims that Safas has not tested the granules from any of Etura's accused products to determine their composition, and, therefore, Safas has "no affirmative factual evidence of the type allowed by Federal Rule 56 that would allow a reasonable jury to conclude that the granules used in any of Etura's Korstone products" are made of a combination of a thermo-plastic component and a thermoset plastic component. (D.I. 61 at 10.)

In response, Safas asserts that it has performed extraction tests on Etura's accused products. (D.I. 71 at 12.) Safas claims that these extraction tests show that Etura's thermoset plastic granules include a thermoplastic component, and thus the granules infringe the asserted claims of the '895 patent. (*Id.*) Safas also argues that ACS, Etura's primary supplier of thermoplastic granules, has represented that its granules "cross-link," meaning that they are a combination of a thermoplastic and a thermoset plastic. (*Id.*) Finally, Safas argues that Robert Bordener, the Vice President of Talon Group, Etura's predecessor-in-interest, admitted that Etura's accused products infringe the '895 patent. (*Id.* at 13.)

Etura correctly points out that I excluded Safas' test results in a ruling on October 3, 2003. (D.I. 88 at 16, 18.) Etura also argues that any documents referencing the ACS granules are hearsay. (D.I. 89 at 10, 11.) As to the alleged admission by Mr. Bordener, Etura asserts that he is not qualified to render an opinion as to whether Etura's products infringe the '895 patent, and, moreover, his deposition testimony is hearsay. (D.I. 89 at 18.) Etura argues that, as a result, Safas has no evidence pertaining to the composition of the granules that are used in Etura's accused products. (*Id.* at 13.)

I am persuaded by Etura's arguments. Based upon the record, Safas cannot meet its burden of proving, by a preponderance of the evidence, that Etura's accused products meet all of the limitations present in the asserted claims. *See Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir.1991); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n,* 718 F.2d 365, 376 (Fed. Cir.1983). First, as I made clear to the

parties in my ruling on October 3, 2003, Safas' test results pertaining to the composition of the granules used in Etura's accused products are not a part of the record in this case. (D.I. 88 at 16, 18.) Safas has had the burden, since filing this case in December of 2001, to present factual evidence showing that Etura's accused products infringe the '895 patent. Safas did not come forward with its test results and expert reports based on those test results until nearly six weeks after the close of discovery. (*Id.* at 17.) For Safas to foist new test results upon Etura after the close of fact and expert discovery, after dispositive motions were filed, and only two months before the start of trial, is inexplicable and intolerable. Therefore, consistent with my prior ruling, I will not consider any evidence of Safas' test results with respect to this case. (*Id.* at 18.)

Second, the ACS documents upon which Safas relies to defeat Etura's Motion are hearsay, and would not be admissible at trial. Safas would like to use the ACS documents to prove the truth of the out-of-court statements contained therein: specifically, that the ACS granules used in Etura's accused products "cross-link[ ] during manufacturing, which necessarily requires that its thermoplastic granules have a thermoset component." (D.I. 71 at 12.) The first ACS document is a copy of portions of ACS' Poly Stone Spray Guidelines (the "Guidelines"). (D.I. 76 ¶ 14, Exh. 11.) The date the Guidelines were written, who read and received them, and the author are not revealed.[3] The second ACS document is a copy of portions of a magazine

article entitled "Crunchies," from the May/June 2001 issue of Solid Surface Magazine. (*Id.* ¶ 15, Exh. 12.) The exact date and author of this document are also not revealed.[4] The ACS documents are Safas' only evidence of cross-linking.

■ In the Third Circuit, "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. Of Medicine & Dentistry of N.J.*, 223 F.3d 220, 222–23 (3d Cir.2000); *see also Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc.*, 63 F.3d 1267, 1274–75 (3d Cir. 1995) (citations omitted). Safas, the proponent of the evidence, has not indicated, in its papers or during argument on Etura's motion, how it might overcome a hearsay objection at trial. Since I will not presume that Safas could produce non-hearsay testimony to replace the hearsay documents or to somehow support their admission, Safas has not met its burden under Federal Rule of Civil Procedure 56(e) to "set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *see also Scosche Industries, Inc. v. Visor Gear Inc.*, 121 F.3d 675, 680–81 (Fed.Cir.1997) (citations omitted). Therefore, as the ACS documents are not admissible, and Safas has not shown how it could put on admissible evidence concerning the ACS granules at trial, the allegations regarding ACS do not stand in the way of summary judgment. *See Scosche Industries*, 121 F.3d at 681

---

**3.** Both ACS documents are attached to the Declaration of Dawn Rudenko, Safas' counsel, in support of its opposition to Etura's Motion. (D.I.76.)

**4.** In the "Crunchies" article, Lou Giovannini, ACS' Vice President of Sales and Marketing, makes certain statements pertaining to his

company's thermoplastic granules. Presumably, Safas would like to offer these into evidence. However, Mr. Giovannini has not sworn to any of the statements he made in the article, nor has Safas made an affirmative showing that he is available and competent to testify as to his statements at trial.

(citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

Finally, Mr. Bordener's testimony does not raise a genuine issue of material fact with respect to Etura's alleged infringement of the '895 patent. Though Mr. Bordener is the Vice–President of Talon Group, Etura's predecessor-in-interest, he is not a chemist or a lawyer, and characterized himself as a "layperson" with respect to the technology involved in this litigation. (D.I. 76, Exh. 3 at 79.) Mr. Bordener testified that he believed certain of Talon's products infringed the '895 patent. (Id. at 78.) When asked why he thought that, Mr. Bordener said, "I had talked with Akbar [Ghahary, the inventor of the '895 patent], and I think we probably were. We never had to get an official determination because you only go to court when you have a disagreement, and Akbar and I agreed." (*Id.* at 79.) Thus, the only basis for Mr. Bordener's apparent belief that Talon's products may have infringed the '895 patent was because the inventor of that patent told him so. That hearsay, reflecting the self-serving statement of the inventor, does not raise a genuine issue of material fact.

## V. CONCLUSION

■ Safas has not presented sufficient evidence to create a genuine issue of material fact for trial. Because Safas has failed to adequately adduce evidence demonstrating that the granules in Etura's accused products meet all of the limitations present in claims 1–3 of the '895 patent, Etura is entitled to summary judgment of non-infringement. Etura's Motion (D.I.60) will therefore be granted to the extent it seeks a ruling on infringement. It is denied to the extent it seeks summary disposition on the question of the validity of the '895 patent.[5]

An appropriate Order will issue.

## ORDER

For the reasons set forth in the Memorandum Opinion issued on this date, it is hereby ORDERED that the Motion for Summary Judgment of No Infringement and Invalidity (D.I. 60; the "Motion") by defendant Etura Premier, L.L.C. ("Etura") is GRANTED to the extent that Etura is found to be not infringing the patent-in-suit. In all other respects, the Motion is denied as moot.

IT IS SO ORDERED.

---

**5.** "[A] district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement." *Phonometrics, Inc. v. Northern Telecom, Inc.,* 133 F.3d 1459, 1468 (Fed.Cir.1998) (citing *Nestier Corp. v. Menasha Corp.-Lewisystems Div.,* 739 F.2d 1576, 1580–81 (Fed.Cir.1984)).