MEMORANDUM OPINION
 

 JORDAN, District Judge.
 

 I. INTRODUCTION
 

 This is a patent infringement case. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. Presently before me is a Motion for Summary Judgment on Infringement filed by plaintiffs Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, “Philips”). (Docket Item [“D.I.”] 292; “Philips’ Motion”.) Also before me is a Motion for Summary Judgment of Nonin-fringement filed by defendant Compo Micro Tech (“CMT”). (D.I. 302; “CMT’s Motion”.) For the reasons that follow, Philips’ Motion will be granted in part and denied in part and CMT’s Motion will be granted in part and denied in part.
 

 II. BACKGROUND
 

 Philips alleges that CMT infringes claims 1, 3 and 4 of U.S. Patent No. 4,703,-359, entitled “Universal remote control unit with model identification capability” (issued October 27, 1987) (“the ’359 patent”) and all of the claims of U.S. Patent No. 5,872,562, entitled “Universal remote control transmitter with simplified device identification” (issued February 16, 1999) (“the ’562 patent”). The procedural and factual background and a discussion of the technology disclosed in the patents-in-suit may be found in several prior opinions and orders issued in this ease.
 
 (See
 
 D.I. 351 (denying Remote Solution’s motion to dismiss for lack of personal jurisdiction); D.I. 352, 353 (granting CMT’s motion to sever and for separate trials); D.I. 376, 377 (claim construction).)
 

 III.STANDARD OF REVIEW
 

 Federal Rule of Civil Procedure 56 states that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to judgment as a matter of law.
 
 Adickes v. S.H. Kress & Co.,
 
 398 U.S. 144, 151-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party also bears the responsibility of informing the court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to “set forth specific facts showing that there is a genuine issue for trial.” Fed. R.Civ.P. 56(e);
 
 see also Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 

 A patent infringement analysis involves two steps: claim construction and application of the construed claim to the accused process or product.
 
 Markman v. Westview Instruments, Inc.,
 
 52 F.3d 967, 976 (Fed.Cir.1995) (en banc),
 
 aff'd,
 
 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step, claim construction, is a matter of law.
 
 See Cybor Corp. v. FAS Technologies, Inc.,
 
 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc). The second step, application of the claim to the accused product, is a question of fact.
 
 See Kustom Signals, Inc. v. Applied Concepts, Inc.,
 
 264 F.3d 1326, 1332 (Fed.Cir.2001) (“Patent infringement, whether literal or
 
 *DCLXXXVII
 
 under the doctrine of equivalents, is a question of fact.”). Summary judgment is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury.
 
 See Telemac Cellular Corp. v. Topp Telecom, Inc.,
 
 247 F.3d 1316, 1323 (Fed.Cir.2001).
 

 IV. DISCUSSION
 

 A.
 
 The ’859 Patent
 

 On March 29, 2004, I construed the only disputed claim term in the ’359 patent — “signal structure identification data” — to mean “information (data) that identifies a signal structure.” (D.I. 376; D.I. 377 at 14.) By doing so, I adopted Philips’ proposed construction of that claim term.
 
 (See
 
 D.I. 322 at 2.) At oral argument, CMT conceded that, if I adopted Philips’ proposed claim construction for “signal structure identification data,” then CMT’s accused products literally infringe claims 1, 3 and 4 of the ’359 patent.
 
 (See
 
 D.I. 338 at 49:20 — 50:14; 51:18-25; 52:10-19.) Therefore, because there are no genuine issues of material fact regarding this issue, Philips’ Motion will be granted to the extent that it requests summary judgment of literal infringement of claims 1, 3 and 4 of the ’359 patent by CMT.
 

 B.
 
 The ’562 Patent
 

 The parties disputed the following two claim terms in the ’562 patent: “an entry initiate key” and “entry initiate signal.”
 
 {See
 
 D.I. 322.) On March 29, 2004, I construed “an entry initiate key” to mean “one entry initiate key” and “entry initiate signal” to mean “the keyboard output signal generated by the entry initiate key.” (D.I. 376, D.I. 377 at 18.) By doing so, I substantially adopted CMT’s proposed construction of those claim terms.
 
 {See
 
 D.I. 322 at 3, 4.)
 

 1. Literal infringement
 

 Philips argues that, under the claim construction I have adopted, CMT’s accused products literally infringe the ’562 patent. (D.I. 293 at 21.) Specifically, Philips states that, in order to initiate the direct entry programming method of CMT’s universal remote controls (“URCs”), the user must press a category key
 
 {e.g.,
 
 ‘VCR”) that identifies the category of the appliance to be programmed and some other, non-category key
 
 {e.g.,
 
 “Select”) simultaneously.
 
 {Id.)
 
 Philips argues that the non-category key satisfies the claim element “an entry initiate key” as I have construed it, and that the category key satisfies the “predetermined group of keys” element in claim 9.
 
 {Id.
 
 at 22.)
 

 In response, CMT argues that its accused URCs do not literally infringe the ’562 patent because they cannot be programmed unless a user presses two buttons simultaneously.
 
 [1]
 
 (D.I. 329 at 8.) In response, Philips says that there is nothing in the claim language, specification, or prosecution history of the ’562
 
 *DCLXXXVIII
 
 patent that precludes pressing the category key and the entry initiate key together. (D.I. 317 at 12; D.I. 324 at 16.)
 

 As discussed in the claim construction opinion, there is language in the specification and the prosecution history of the ’562 patent that precludes a user from pressing the category key and the entry initiate key together.
 
 (See
 
 D.I. 377 at 16-18.) While it is not necessary to repeat the entire claim construction analysis here, I will note that the most persuasive evidence that pressing two keys together is not contemplated by the ’562 patent is the statement in the description of the preferred embodiment that “if the number of keys pressed exceeds one, the routine is not part of the present invention [the direct-entry method] and will not be described in detail herein.” ’562 patent, col. 5, 11. 20-24 and Fig. 3. While I am mindful of the fact that claims are not ordinarily limited in scope to the preferred embodiment,
 
 Altiris, Inc. v. Symantec Corp.,
 
 318 F.3d 1363, 1370 (Fed.Cir.2003), by referencing “the present invention,” the cited language clearly states that pressing two keys simultaneously will not initiate the direct-entry method claimed by the ’562 patent.
 

 According to my claim construction, in order to begin programming a URC according to the method disclosed in the ’562 patent, a user must press one entry initiate key. If a user presses more than one key, the URC will not implement the method claimed by the ’562 patent.
 
 See
 
 ’562 patent, col. 5,11. 20-24 and Fig. 3. The parties do not dispute that, to begin programming one of CMT’s accused URCs, a user must press a category key and a non-category key simultaneously.
 
 (See
 
 D.I. 293 at 22 (quoting testimony from CMT’s President that a “start signal” is generated in the accused URCs as long as a user holds down two buttons for three seconds); D.I. 329 at 8.) Nor do they dispute that a user is unable to program CMT’s accused URC if he or she presses either the category key or the non-category key alone. Therefore, it cannot be said that CMT’s accused URC has one entry initiate key, and it thus does not literally infringe claim 9 of the ’562 patent.
 
 Laitram Corp. v. Rexnord, Inc.,
 
 939 F.2d 1533 (Fed.Cir.1991) (holding that an accused device literally infringes an asserted patent only if every limitation set forth in a claim is present in the accused device exactly or by a substantial equivalent). It logically follows that, since the accused URC does not have one entry initiate key, it also does not embody the entry initiate signal limitation (that is, the keyboard output signal generated by the entry initiate key), and thus CMT’s accused URC does not literally infringe claim 1 of the ’562 patent. For these reasons, CMT’s Motion will be granted to the extent that it requests summary judgment that its accused products do not literally infringe all of the claims of the ’562 patent.
 

 2. Infringement under the doctrine of equivalents
 

 Philips further argues that, even if CMT’s URCs do not literally infringe the claims of the ’562 patent, they nevertheless infringe under the doctrine of equivalents. (D.I. 317 at 14.) CMT asserts that Philips is precluded from asserting infringement under the doctrine of equivalents because its technical expert, Stephen Bristow, never addressed this issue in either of his expert reports, and thus, he cannot testify on the doctrine of equivalents issue at trial.
 
 [2]
 
 (D.I. 329 at 11.) Philips responds
 
 *DCLXXXIX
 
 that there is more than sufficient evidence in the record to demonstrate that CMT’s URCs infringe the ’562 patent under the doctrine of equivalents. (D.I. 324 at 17 n. 4.) CMT further argues that, even if Philips is permitted to assert the doctrine of equivalents, “prosecution history estoppel would bar Philips from resorting to equivalents to prove infringement.” (D.I. 329 at 14.) Finally, if Philips is not barred from resorting to the doctrine of equivalents, CMT says that Philips has failed to show that the differences between the programming method in CMT’s accused products and the claims of the ’562 patent are insubstantial.
 
 (Id.
 
 at 15.)
 

 Generally, to prove infringement under the doctrine of equivalents, the party asserting the doctrine must prove that the element in the accused device “performs substantially the same function in substantially the same way to obtain substantially the same result” as the claim limitation.
 
 Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,
 
 520 U.S. 17, 39-40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). In this case, the parties do not dispute that simultaneously pressing two keys on CMT’s accused URCs performs substantially the same function and obtains the same result as the invention claimed in the ’562 patent, namely, “sending a signal to the [URC’s] microprocessor to initiate the programming method for code entry.” (D.I. 303 at 7; D.I. 317 at 15; D.I. 320 at 17.) Therefore, under the analysis set forth in
 
 Warner-Jenkinson,
 
 the pertinent question is whether the way in which CMT’s accused products initiate the entry signal — that is, by pressing two keys simultaneously — is an insubstantial difference from the claimed invention.
 
 See id.
 
 However, CMT argues that I should not reach this question, because Philips made narrowing amendments and arguments during prosecution of the ’562 patent that now bar it from asserting any range of equivalents. (D.I. 329 at 14.)
 

 The United States Supreme Court has set forth the following guidance for courts considering whether prosecution history estoppel prevents a patentee from asserting a given range of equivalents:
 

 When the patentee has chosen to narrow a claim, courts may presume.. .that the territory surrendered is not an equivalent of the territory claimed. In those instances, however, the patentee still might rebut the presumption that estop-pel bars a claim of equivalence. The patentee must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent.
 

 Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,
 
 535 U.S. 722, 740-41, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). In other words, when analyzing prosecution history estoppel relative to an amendment of a particular claim limitation, the court first determines whether the amendment narrowed the literal scope of the claim. Robert L. Harmon, Patents and the FedERAL CirCüit at 439 (6th ed.2003). If so, prosecution history estoppel may apply unless the patent owner establishes, by reference to the prosecution history, that the amendment was made for a purpose unrelated to patentability.
 
 Id.
 
 If the patent owner fails to do so, prosecution history estoppel completely bars application of the doctrine of equivalents to that claim limitation, unless the patent owner can overcome the presumption that the amendment did not surrender the particular equivalent in question.
 
 Id.
 

 As discussed in the claim construction opinion, Philips amended the “keyboard means” limitation of claim 1 of the ’562 patent from “ones of said keys”
 
 *DCXC
 
 to “one of said keys.”
 
 (See
 
 D.I. 377 at 16.) This amendment thus narrowed the scope of the claim from any number of keys to one key. Because the amendment narrowed the literal scope of the claim, prosecution history estoppel applies unless Philips establishes, by reference to the prosecution history, that the amendment was made for a purpose unrelated to pat-entability.
 
 See Festo,
 
 535 U.S. at 740, 122 S.Ct. 1831. Philips has failed to set forth any reason why it made this amendment, much less argue that the amendment was made for a reason unrelated to patentability, based on the prosecution history of the ’562 patent. Therefore, prosecution history estoppel completely bars application of the doctrine of equivalents to that claim limitation, unless Philips can overcome the presumption that the amendment did not surrender the particular equivalent in question, that is, pressing two keys simultaneously to initiate the URC program mode. I find that Philips cannot overcome this presumption, for the following reasons: (1) the specification of the ’562 patent says that pressing more than one key will not initiate the claimed direct-entry method
 
 (see supra
 
 at p. 646); (2) during prosecution of the ’562 patent, Philips argued, to the Examiner and the Board of Patent Appeal and Interferences (the “Board”), that “[o]ne of the keys on the keyboard is used to cause an ‘entry initiate signal’ to be generated” (D.I. 377 at 17); and (3) after Philips’ appeal, the Board stated that “the ‘entry initiate signal’ [corresponds] to the ‘YES’ signal generated by depressing the ‘RECORD’ key (Fig.3)”
 
 (id.).
 
 From this and other evidence from the prosecution history discussed in the claim construction opinion
 
 (see id.
 
 at 14-18), it is apparent that Philips surrendered the equivalent in question-pressing two keys simultaneously to generate an entry initiate signal — during prosecution of the ’562 patent.
 

 Because I find that Philips cannot overcome the presumption that the amendment surrendered the equivalent in question, prosecution history estoppel completely bars the application of equivalents to the “entry initiate signal” and “an entry initiate key” limitations found in claims 1 and 9 of the ’562 patent.
 
 (See id.
 
 at 14 (explaining that the claim terms “an entry initiate key” and “entry initiate signal” are related and must be considered them together).) For these reasons, summary judgment of noninfringement of the asserted claims of the ’562 patent will be granted to CMT.
 

 An appropriate order will issue.
 

 ORDER
 

 For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that
 

 1. Philips’ Motion for Summary Judgment on Infringement (D.I. 292) is GRANTED IN PART and DENIED IN PART. It is granted to the extent that defendant Compo Micro Tech (“CMT”) is found to be literally infringing claims 1, 3 and 4 of U.S. Patent No. 4,703,359 and denied to the extent that CMT is not found to be infringing, either literally or under the doctrine of equivalents, the asserted claims of U.S. Patent No. 5,872,562.
 

 2. CMT’s Motion for Summary Judgment of Noninfringement (D.I. 302) is GRANTED IN PART and DENIED IN PART. It is granted to the extent that CMT is found to be not infringing, either literally or under the doctrine of equivalents, the asserted claims of U.S. Patent No. 5,872,562. It is denied to the extent that CMT is found to be literally infringing claims 1, 3 and 4 of U.S. Patent No. 4,703,-359.
 

 [1]
 

 . CMT also argues that the language of claim 9 requires the user to first activate the entry initiate key, and then, after that entry initiate key is activated, the user activates “at least one address key.”
 
 {Id.
 
 at 9 (citing '562 patent, col. 8, 11. 37-39).) CMT argues that, because the literal language of claim 9 requires that the entry initiate key is pressed first, the claim must be construed that way.
 
 {Id.)
 
 (citing
 
 Loral Fairchild Corp. v. Sony Corp.,
 
 181 F.3d 1313, 1321 (Fed.Cir.1999).) Whether the steps recited in a method claim need to be performed in a certain order is an issue of claim construction,
 
 Altiris, Inc. v. Symantec Corp.,
 
 318 F.3d 1363, 1370 (Fed.Cir.2003), which was not raised in the parties’ claim construction briefing. In any case, it does not impact my determination
 
 infra
 
 that the accused URCs do not literally infringe the '562 patent, and I therefore express no opinion on the issue.
 

 [2]
 

 . Though it has no impact on my ultimate findings herein, Philips represented that it would not rely on Mr. Bristow's or any other expert's opinion to prove infringement by the doctrine of equivalents.
 
 (See
 
 Transcript from 3/29/2004 Pretrial Conference at 8:23-9:4.)