MEDTRONIC MINIMED INC.,
Plaintiff and Counter-
defendant,

v.

SMITHS MEDICAL MD INC., De-
fendant and Counterclaimant.

No. CIV.A. 03–776–KAJ.

United States District Court,
D. Delaware.

June 15, 2005.

Karen Jacobs Louden, Julia Heaney, Kristen Healey, Philip H. Bangle, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, McDermott Will & Emery, Palo Alto, CA (Terrence P. McMahon, of counsel), McDermott Will & Emery, Washington, DC (Jon B. Dubrow, of counsel), McDermott Will & Emery, San Diego, CA (David M. Beckwith, of counsel), Gibson Dunn & Crutcher, Los Angeles, CA (Daniel Floyd, of counsel), for plaintiff.

Richard D. Kirk, Cheryl Siskin, The Bayard Firm, Wilmington, DE, Morgan, Lewis & Bockius LLP, Washington, DC (Anthony C. Roth, Thomas E. Nelson, Corinne A. Niosi, J. Clayton Everett, Jr., of counsel), for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

### I. INTRODUCTION

This is a patent infringement case. Presently before me are four motions filed by Medtronic MiniMed, Inc. ("MiniMed") and one motion filed by Smiths Medical MD, Inc. ("Smiths"). The motions filed by MiniMed are a Motion for Summary Judgment of Non–Infringement of Claims 6 and 11 of U.S. Patent No. 6,241,704 (the "'704 patent") (Docket Item ["D.I."] 171), a Motion for Summary Judgment of Invalidity of Claims 6 and 11 of Smiths Medical '704 Patent (D.I.179), a Motion for Partial Summary Judgment Limiting Smiths' Patent Infringement Counterclaim Damages to the period after November 17, 2003 (D.I. 183), and a Motion for Summary Judgment of Infringement of U.S. Patent Nos. 5,665,-065 (the "'065 patent") and 6,554,798 (the "'798 patent") (D.I.202). Smiths has filed a Motion for Summary Judgment of Non–Infringement of the '065 and '798 patents. (D.I.194.)

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. For the reasons that follow, MiniMed's Motion for Summary Judgment of Non–Infringement of Claims 6 and 11 of the '704 patent (D.I.171) will be granted; MiniMed's Motion for Summary Judgment of Invalidity of Claims 6 and 11 of Smiths Medical '704 Patent (D.I.179) will be denied as moot; MiniMed's Motion for Partial Summary Judgment limiting Smiths' Patent Infringement Counterclaim Damages to the period after November 17, 2003 (D.I.183) will be denied as moot; MiniMed's Motion for Summary Judgment of Infringement of the '065 and '798 patent (D.I.202) will be granted as to the '798 patent; judgment as to the '065 patent will be reserved[1]; and Smiths' Motion for Summary Judgment of Non–Infringement of the '065 and '798 patents (D.I.194) will be denied as to the '798 patent; judgment as to the '065 patent will be reserved.

### II. BACKGROUND

The background related to all of the patents in suit is set forth in the Opinion construing the disputed claim terms. (D.I. 280 at 1–6.)

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman*

---

1. As described in open court on June 14, 2005, judgment on infringement of the '065 patent will be reserved until after the parties have provided supplemental briefing.

*v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.*, 475 U.S. at 587, 106 S.Ct. 1348 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. DISCUSSION

### A. MiniMed's Motion for Summary Judgment of Non–Infringement of the '704 Patent

Smiths has asserted that MiniMed has directly infringed its '704 patent by "making, using, selling and offering for sale" the 508, 511, 512, and 712 series infusion pumps (collectively "MiniMed's Pumps") in violation of 35 U.S.C. § 271.[2] (D.I. 28 at 27–28.) Specifically, Smiths asserts that MiniMed's Pumps infringe Claims 6 and 11 of the '704 patent.[3] In this motion for summary judgment of non-infringement, MiniMed asserts that its pumps lack at least one limitation required by each of the asserted claims of the '704 patent. (D.I. 172 at 2.)

A patent infringement analysis involves two steps: claim construction and then the application of the construed claim to the accused process or product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step, claim construction, has been held to be purely a matter of law. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc). The second step, application of the claim to the accused product, is a fact-specific inquiry. *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed.Cir.2001) (Patent infringement, "whether literal or under the doctrine of equivalents, is a question of fact."). The patent owner has the burden of proving infringement by a preponderance of the evidence. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758 (Fed.Cir.1984) (citing *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed.Cir.1983)). Summary judgment is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir.2001).

---

**2.** 35 U.S.C. § 271 provides in relevant part, that "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

**3.** MiniMed argues that in its "First Interrogatory Response, No. 8, Smiths specifically limits its Claim 6 infringement claim to the 512 and 712 pumps." (D.I. 172 at 2, n. 1.) MiniMed did not attach the interrogatory to its briefing. As I hold that none of MiniMed's accused pumps infringe the '704 patent, however, this point is immaterial.

■ Having previously construed the disputed claim terms, I now proceed to a "comparison of the claim to the accused device, [which, for a finding of infringement,] requires a determination that every claim limitation or its equivalent be found in the accused device." *Transclean Corp. v. Bridgewood Servs., Inc.,* 290 F.3d 1364, 1370 (Fed.Cir.2002) (citing *Warner–Jenkinson,* 520 U.S. at 29, 117 S.Ct. 1040). In order for MiniMed to establish on summary judgment that it does not directly infringe, it must prove that it does not practice at least one of the limitations in each asserted claim of the '704 patent. To withstand summary judgment, Smiths must show that, at a minimum, there is a genuine issue of material fact with regard to the elements which MiniMed argues it does not practice.

### a. Claim 6

I previously construed the "port means" limitation contained in Claim 6 to be a means-plus-function limitation with two separate functions. (D.I. 280 at 15–16; D.I. 281 at 2.) I construed the first function as "operable as a communications port for effecting communication with a device external of said pump mechanism" and the corresponding structure as communications port 132. (D.I. 281 at 2.) I construed the second function as "operable as an input for receiving input from the patient or a user for specifying the amount of fluid to be pumped by said pump mechanism" and the corresponding structure as remote dose port 234. (*Id.*) The "communication port 132" and the "remote dose port 234" are both physical ports into which a cable is plugged. (D.I. 191, Ex. 1; '704 patent, FIG.1; col. 7:50–59.)

MiniMed argues that it does not infringe Claim 6 because its pumps do not contain a structure that corresponds to the "port means" limitation. (D.I. 261 at 4–13.) Smiths responds by arguing that MiniMed's Pumps use infrared telemetry or radio frequency and therefore have a port which corresponds to "communications port 132" in the '704 specification. (D.I. 242 at 7–10.)

Alternatively, Smiths argues that the 508 Pump in combination with its Com–Station has a physical port that is the same or equivalent to the structure disclosed in the '704 patent specification. (D.I. 242 at 11–13.) Specifically, Smiths states that the 508 Pump communicates with a PC through a Com–Station "which is a *'cradle like device'* that holds the pump." (D.I. 242 at 11 (citing D.I. 221, Ex. H at 8) (emphasis original).) Smiths further argues that the Com–Station is "a physical receptacle into which an electrical cable or peripheral device is plugged or connected . . . ." (*Id.*) Finally, Smiths cites to the 508 Pump user manual, which states that "[w]ith the Com–Station, you will be able to connect your pump to a computer to 'download' the stored information." (D.I. 173, Ex. A at 5.) Smiths' expert, Anthony Storace, further describes the Model 508 Pump as communicating with the Com–Sation through the use of an infrared communication port. (D.I. 243, Ex. H at 8.) In short, Smiths is arguing that the Com–Station is the physical receptacle into which the peripheral device is plugged for the function of "effecting communication with a device external of said pump mechanism." (D.I. 242 at 11)

■ "In order for an accused structure to literally meet a section 112, paragraph 6 means-plus-function limitation, the accused structure must either be the same as the disclosed structure or be a section 112, paragraph 6 'equivalent,' *i.e.,* (1) perform the identical function and (2) be otherwise insubstantially different with respect to structure." *Kemco Sales, Inc. v. Control Papers Co., Inc.,* 208 F.3d 1352, 1364 (Fed. Cir.2000) (internal citations omitted). Thus, an accused structure may literally infringe a means-plus-function claim limi-

tation if it performs the identical function, in substantially the same way, with substantially the same result. *Id.*

■ With respect to equivalent structures, there is a difference under section 112, paragraph 6 between literal infringement and the doctrine of equivalents, the difference being in the time focus of the analyses. *See Al–Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1320 (Fed.Cir. 1999)("One important difference between section 112, paragraph 6 and the doctrine of equivalents involves the timing of the separate analyses for an 'insubstantial change.' "). A structural equivalent under section 112, paragraph 6 must have been available at the time the claim issued. *Id.* Thus, an "after arising equivalent" cannot literally infringe a means-plus-function claim; it can only infringe under the doctrine of equivalents. *Id.* In other words, for there to be literal infringement under section 112, paragraph 6, an equivalent structure must have been available at the time of the patent issuance, while an equivalent under the doctrine of equivalents may arise after the patent has issued and before the time of infringement. *Id.* The two equivalence analyses may collapse into one when the technology alleged to be equivalent was known before the patentee's invention:

> [W]here the equivalence issue does not involve later-developed technologies, but rather involves technology that predates the invention itself[,] ... a finding of non-equivalence for § 112, ¶ 6, purposes should preclude a contrary finding under the doctrine of equivalents. This is because ... the structure of the accused device differs substantially from the dis-

closed structure, and given the prior knowledge of the technology asserted to be equivalent, it could readily have been disclosed in the patent.

*Chiuminatta,* 145 F.3d at 1311. Importantly, "[b]ecause the 'way' and 'result' prongs are the same under both the section 112, paragraph 6 test and doctrine of equivalents test, a structure failing the section 112, paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s)." *Kemco,* 208 F.3d at 1364.

■ With respect to literal infringement in this case, infrared telemetry is not the same or equivalent to the structures in the '704 patent. The language and pertinent figure in the '704 patent demonstrate that the communications port 132, which is the structure in question, must be a physical port. Although in the specification infrared telemetry is discussed as a possible way for the pump to communicate with an external device ('704 patent, col. 5:37–40), the specification also states that in order for the pump to communicate in this fashion "an appropriately configured infrared signal receiver associated with communications port 132" must be used (*id.,* col. 28:15–16). The figure associated with that discussion makes clear that such a device is used in addition to a physically connected communications port 132, not in lieu of it. In FIG. 17, communications port 132 can be seen connected to device 478, which in turn is connected to the computer either directly through a cable or alternatively through a non-mechanical connection such as infrared signals. (*Id.,* col. 28:5–16.) This reinforces the notion that communications port 132 must be physical in nature.

FIG. 17

As communications port 132 is a physical port, and must use a separate device in order to communicate by way of infrared telemetry, it is necessarily substantially different than an infrared receiver that does not have a physical port. Because infrared telemetry is substantially different than a physical port, it does not literally infringe the "port means" limitation in Claim 6 of the '704 patent. *See Kemco,* 208 F.3d at 1364.

I also reject for two reasons Smiths' argument that the 508 Model pump used in conjunction with the Com–Station literally infringes Claim 6. First, it is the pump itself that is placed in the Com–Station. (D.I. 221, Ex. H at 8.) Even if the cradle was considered a receptacle, the pump is placed in it, which is not a peripheral device. Second, Smiths own expert admits that the pump communicates with the Com–Station through infrared telemetry, not a "physical receptacle." (D.I. 243, Ex. H at 8.) The Com–Station structure is also substantially different than communications port 132 and does not literally infringe the "port means" limitation. Consequently, the 508 Pump does not literally contain the "port means" limitation.

■ Smiths also argues that the 508 pump infringes under the doctrine of equivalents. (D.I. 242 at 11–13.) I have already held that infrared telemetry does not literally infringe the "port means" limitation construed under Section 112, paragraph 6. Therefore, it can only infringe under the doctrine of equivalents if infrared telemetry is an "after arising technology." *See Chiuminatta,* 145 F.3d at 1311. It plainly is not. (*See* '704 patent, col. 5:40 (discussing infrared telemetry)). Therefore, MiniMed's 508 pump does not infringe under the doctrine of equivalents.

b.   Claim 11

Claim 11 requires that the pump use an "access code." ('704 patent, col. 47:40–60.) I previously construed "access code" to mean "a sequence of characters used as a password which an authorized user must enter to gain access to the controller means." (D.I. 281 at 2.) MiniMed argues that its pumps do not practice this limitation because none of its pumps use a password to gain access to the pump controls. (D.I. 172 at 20.) Smiths responds that the child-lock feature contained in MiniMed's Pumps practice this limitation. (D.I. 242 at 18–19.) An examination of the pumps'

user guides, however, shows that the child-lock feature does not use a password to gain access to the pump. (D.I. 173, Ex. A at 76–77, Ex. B at 88–89, Ex. C at 96–97.) When the child-lock feature is used, all that is required to gain access to the pump is series of simple steps (*see id.*) [4], none of which could be considered a password or access code as I have construed it. Consequently, none of MiniMed's Pumps practice this limitation.

### B. MiniMed's Summary Judgment Motion of Infringement of the '798 Patents and Smiths' Summary Judgment Motion of Non–Infringement of the '798 Patents

MiniMed has moved for summary judgment that Smiths infringes Claims 1, 2, 10, and 12 of the '798 patent. (D.I. 203 at 22.) Smiths has moved for summary judgment of non-infringement of the '798 patent. (D.I.194.)

#### 1. Claim 1

Smiths asserts that its pumps do not practice two of the claim limitations of Claim 1. Thus Smiths has effectively conceded that its pumps practice the other limitations of Claim 1.[5] I will now review the two claim terms in dispute.

a. "a bolus estimator used in conjunction with the processor and externally supplied values to estimate an amount of liquid to be infused based upon an estimate of a material to be ingested by the body" [6]

The only disagreement between the parties with respect to this limitation involves the need for the bolus estimator to be a device separate from the processor used to estimate the amount of liquid to be infused. (D.I. 237 at 30.) During claim construction, I construed "bolus estimator" to be "a device that estimates the amount of liquid to be infused." (D.I. 280 at 48.) Further, I expressly rejected Smiths' argument that the "bolus estimator" had to be "a device separate from the processor." (*Id.*) Consequently, Smiths' arguments that rely on such a construction are also rejected.

b. "an indication device, providing at least one of a visual indication, an audible indication or a tactile indication, to indicate when an amount of fluid to be infused has been calculated"

█ With respect to this limitation, I construed "an amount of fluid to be infused" to mean "a quantity of fluid to be infused in the patient." (D.I. 281 at 4.)

---

**4.** To disable the child-lock feature the user must go to "the TIME OF DAY screen, press SEL until you see SET UP II then press ACT. Press SEL until you see the CHILD BLOCK screen, then press ACT." (D.I. 173, Ex. A at 76.) Once at the CHILD BLOCK screen the user presses one of the arrows on the pump to turn the feature on or off. (*Id.*)

**5.** These limitations are:
An external infusion device for infusion of a liquid into a body from a reservoir,
the external infusion device comprising: a drive mechanism to operatively couple with a reservoir to infuse a liquid into a body; a housing adapted for use on an exterior of the body, wherein the housing is sized to

contain at least a portion of a reservoir, wherein the drive mechanism is contained within the housing, wherein the drive mechanism operatively couples with the at least a portion of a reservoir within the housing, and wherein the housing is sized to fit in a clothing pocket; a processor coupled to the housing . . . .
'798 patent, col. 30:26–46.

**6.** The same term, "bolus estimator," is in dispute with respect to Claim 2. It is the only limitation in dispute in Claim 2. Therefore, as I find that the Cozmo Pump is covered by the bolus limitation, the pump also infringes Claim 2.

Additionally, I held that this claim term is not restricted to volumetric measurements and can include measurements such as units of insulin. (D.I. 280 at 44–48.) I also held that an "indication device" did not have to be in a remote location. (D.I. 281 at 5.)

MiniMed argues, among other things, that the Cozmo Pump includes a screen that acts as an indication device to show the user what amount of fluid is to infused. (D.I. 203 at 27.) Smiths argues that the indication device on the Cozmo Pump does not indicate a volumetric amount of fluid to be infused and that the indication device is not in a remote location. (D.I. 237 at 23–30.)

While construing this limitation, I held that, because the invention contemplates that the concentration of the medication is a fixed factor, the amount of fluid to be infused can be expressed in terms other than volume. (D.I. 280 at 47–48.) The parties agree that the Cozmo Pump calculates the number of units of insulin to be infused and displays that amount. (D.I. 203 at 27; D.I. 237 at 24.) The Cozmo Pump user manual states that the Cozmo Pump only works with a "Deltec Cozmo® 3mL (300 unit) Insulin Cartridge." (D.I. 204, Ex. C at 21.) Because the Cozmo Pump always uses a cartridge with a concentration of 100 units per 1 mL, the number of units it calculates always corresponds to a specific volume. For example, if the pump calculates a bolus of 2 units, that measurement corresponds to 0.02 mL of fluid. When the Cozmo Pump calculates the number of units of insulin to be infused and displays that information, it is indicating when an amount of fluid to be infused has been calculated and, hence, is practicing this claim limitation.

Smiths alternative argument that the indication device is not located in a remote location was expressly rejected in my claim construction. (D.I. 280 at 49–51.) Because Smiths has conceded that their Cozmo Pump satisfies all but two of the limitations contained in Claim 1 and because I have found that their pump satisfies the "bolus estimator" and "indicator device limitations" of Claim 1, I find that their Cozmo Pump infringes Claim 1.

## 2. Claim 10 and 12 [7]

MiniMed argues that Smiths' Cozmo Pump contains each limitation of Claims 10 and 12. (D.I. 203 at 31–39.) Smiths asserts that its pumps do not practice two limitations which are contained in both Claims 10 and 12. (D.I. 237 at 31–33.) Thus Smiths has effectively conceded that its pumps practice the other limitations of Claims 10 and 12.[8] I will now review the two claim terms in dispute.

---

[7] Claim 10 and 12 are identical except that the term "personal delivery patterns" contained in Claim 10 is replaced by the term "basal rate profiles" in Claim 12. ('798 patent, col. 31:9–32, 31:65–32:21.)

[8] These limitations are:
a drive mechanism to operatively couple with a reservoir to infuse a liquid into a body;
a housing adapted for use on an exterior of the body, wherein the housing is sized to contain at least a portion of a reservoir, wherein the drive mechanism is contained within the housing, wherein the drive mechanism operatively couples with the at least a portion of a reservoir within the housing, and wherein the housing is sized to fit in a clothing pocket;
a processor coupled to the housing;
a keypad coupled to the housing and used in conjunction with the processor to select one of the at least two personal delivery patterns [basal rate profiles];
wherein the processor controls the external infusion device in accordance with the selected one of the at least two personal delivery patterns [basal rate profiles].
'798 patent, col. 30:25–47.

i. "memory coupled to and used in conjunction with the processor to store at least two personal delivery patterns" [9]

Aside from the term "personal delivery patterns," which does not affect this discussion, the parties agree that this limitation has its plain meaning. (D.I. 165 at 35–36.) MiniMed argues that the Cozmo Pump user manual and the testimony of Smiths' experts show that the Cozmo pump has a memory which stores a "basal pattern." (D.I. 203 at 32–34, 38–39.) Smiths responds by merely stating that "MiniMed fails to set forth any evidence that the Cozmo ™ Pump has a memory coupled to the processor ... [or] that the personal delivery patterns are stored in memory." (D.I. 237 at 31.)

I agree with Smiths that MiniMed has not shown any direct evidence that the memory stores the personal delivery pattern or that the memory is coupled to the processor. The inference to that effect from the evidence, however, is overwhelming and is unrebutted. It is common sense that the pump has a memory and that it stores the personal delivery pattern. Memory is defined as "[a]ny apparatus in which data may be stored and from which the same data may be retrieved ...." McGraw–Hill Dictionary of Scientific and Technical Terms, 1308 (6th ed.2003). The Cozmo Pump clearly stores a "basal pattern" (D.I. 204, Ex. C at 52), and therefore, it must have a "memory," as such an apparatus is defined by the function of storing. Further, because the processor uses that stored information for controlling the pump (*id.*), the processor must be coupled to the memory or the information

could not be transferred from one to the other. When questioned during oral argument, Smiths' counsel did not dispute that the Cozmo Pump has "a memory coupled to and used in conjunction with the processor to store at least two [basal rate profiles] personal delivery patterns." Consequently, I conclude that the Cozmo Pump practices this limitation, which is contained in both Claims 10 and 12.[10]

## V. CONCLUSION

Accordingly, MiniMed's Motion for Summary Judgment of Non–Infringement of Claims 6 and 11 of the '704 patent (D.I. 171) will be granted; MiniMed's Motion for Summary Judgment of Invalidity of Claims 6 and 11 of Smiths Medical '704 Patent (D.I.179) will be denied as moot; MiniMed's Motion for Partial Summary Judgment limiting Smiths' Patent Infringement Counterclaim Damages to the period after November 17, 2003 (D.I.183) will be denied as moot; MiniMed's Motion for Summary Judgment of Infringement of the '065 and '798 patent (D.I.202) will be granted as to the '798 patent; judgment on the '065 patent will be reserved; and Smiths' Motion for Summary Judgment of Non–Infringement of the '065 and '798 patents (D.I. 194) will be denied as to the '798 patent; judgment on the '065 patent will be reserved. An appropriate order will follow.

## ORDER

For the reasons set forth in the Memorandum Opinion issued in this matter today, IT IS HEREBY ORDERED that MiniMed's Motion for Summary Judgment of Non–Infringement of Claims 6 and 11 of

---

**9.** Claim 12 contains the same limitation and therefore, the following discussion applies equally to Claim 12 as well. ('798 patent, col. 32:12–13.)

**10.** Smiths also argues that the Cozmo Pump does not have an "indication device." (D.I. 237 at 31–33.) I have already addressed this same limitation with respect to Claim 1. *See supra*, IV.B.1.b. As described therein, the Cozmo Pump has an "indication device."

the '704 patent (D.I.171) is GRANTED; MiniMed's Motion for Summary Judgment of Invalidity of Claims 6 and 11 of Smiths Medical '704 Patent (D.I.179) is DENIED AS MOOT; MiniMed's Motion for Partial Summary Judgment limiting Smiths' Patent Infringement Counterclaim Damages to the period after November 17, 2003 (D.I.183) is DENIED AS MOOT; MiniMed's Motion for Summary Judgment of Infringement of the '065 and '798 patent (D.I.202) is GRANTED as to the '798 patent; judgment on the '065 patent is reserved; and Smiths' Motion for Summary Judgment of Non–Infringement of the '065 and '798 patents (D.I. 194) is DENIED as to the '798 patent; judgment on the '065 patent is reserved.